UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 24-22538-CV-WILLIAMS

TAMIM KHAN,

    Plaintiff,

v.

IGNACIO PALOMERA, *et al.*,

    Defendants.

_____/

## OMNIBUS ORDER

**THIS MATTER** is before the Court on the Motion to Dismiss (DE 26) filed by Defendant The Bondex Platform Inc. ("***Platform***") and the Motion to Dismiss (DE 37) filed by Defendant Bondex Network, Inc. ("***Network***"). Plaintiff filed a Response (DE 40; DE 47) to both Motions to Dismiss and Platform and Network filed their respective Replies (DE 45; DE 50). For the reasons set forth below, Defendants Platform's and Network's Motions to Dismiss (DE 26; DE 37) are **GRANTED**.[1]

### I.   BACKGROUND

Plaintiff Tamim Khan ("***Plaintiff***" or "***Khan***"), a resident of Pinki, Latvia, founded Bondex ("***Company***" or "***Bondex***"), a Singapore company, with the goal of creating a

---

[1] On October 4, 2024, Defendant Bondex Ecosystem Ltd. ("***Ecosystem***"), who is represented by the same counsel appearing for Defendants Platform and Network, filed a Motion to Dismiss (DE 67) arguing that Plaintiff's Complaint should be dismissed on the same grounds raised by Defendants Platform and Network. A review of Ecosystem's Motion to Dismiss (DE 67) confirms that is the exact same as Defendant Network's Motion to Dismiss (DE 40). Therefore, in light of this Order, and in the interests of the "just, speedy, and inexpensive determination of every action and proceeding" pursuant to Federal Rule of Civil Procedure 1, Defendant Ecosystem's Motion to Dismiss (DE 67) is **GRANTED**. *See* FED. R. CIV. P. 1.

decentralized finance platform.  (DE 1 at 1–2.[2])  At the onset, Khan was the primary individual responsible for the initial development and fundraising efforts associated with the finance platform.[3]  (*Id.* at 2.)  In May 2022, Khan and Defendant Ignacio Palomera ("**Palomera**") entered into an asset sale agreement ("**Agreement**") that stipulated to Khan selling all assets of Bondex Pte. Ltd. ("**Bondex Singapore**") to Palomera in exchange for $800,000 and 10,000,000 tokens of Bondex cryptocurrency ("**OBNX**").  (*Id.*)  According to the terms of the Agreement, Palomera was entitled to 15,000,000 Bondex tokens. (*Id.*)

Two months later, in July 2022, Palomera instructed Mitesh Pandey, the Bondex blockchain developer, to change the ownership of all 25,000,000 tokens owned by the Company, including Khan's 10,000,000 tokens. (*Id.* at 3.)  Because Khan did not authorize or know about this transfer, he and Palomera spoke and Palomera assured Khan that the final tradeable version of the token would be delivered to Khan's cryptocurrency wallet as provided in the Agreement. (*Id.*)  In January 2023, Khan and Palomera executed an amendment to the Agreement ("**Amendment**"), revising the final cash payment terms. (*Id.* at 3–4.)  Under the terms of the Amendment, Khan agreed to receive the same 10,000,000 tokens but $140,000 less than the originally agreed amount in the Agreement. (*Id.*)

---

[2] Plaintiff failed to paginate the Complaint in violation of Local Rule 5.1(a) for the Southern District of Florida. *See* S.D. Fla. L.R. 5.1(a)(4).  As a result, the Court will cite to the page number assigned and designated by CM/ECF located at the top of each of page.

[3] According to the Complaint (DE 1), OBNX tokens were marketed and sold as investment opportunities, meeting the criteria of a "security" pursuant to *S.E.C. v. W.J. Howey Co.,* 328 U.S. 293, 298 –99 (1946).

Since May 13, 2024, communications between Khan and Palomera have ceased regarding the OBNX token exchange agreed to in the Agreement and Amendment. (*Id.* at 4.) According to Plaintiff, he has repeatedly attempted to contact Palomera and although the two have scheduled phone calls to discuss the Bondex tokens, Palomera has failed to attend those calls. (*Id.*) Recently, on June 19, 2024, Bondex issued a statement via a social media platform known as X, announcing that the Company's public listing date or initial coin offering of the Bondex token would be July 10, 2024.[4] (*Id.* at 5.) In light of this announcement, Khan filed a Temporary Restraining Order Application ("**TRO Application**") seeking to enjoin the initial coin offering ("**ICO**") scheduled for July 10, 2024 until the resolution of Khan's rights to the 10,000,000 OBNX tokens.[5]

In conjunction with the TRO Application, Khan filed a Complaint (DE 1) against Defendants Palomera, Platform, Network, and Ecosystem alleging various federal securities law violations, including Rule 10b-5 of the Private Securities Litigation Reform Act of 1995 ("**PSLRA**"), civil theft, conversion, and breach of contract.[6] (*Id.* at 5–10.) In

---

[4] At some point, Mr. Palomera increased the maximum supply of the final tradeable tokens to 1,000,000,000 from the initial maximum of 500,000,000 tokens. (*Id.*) Mr. Khan alleges that this increase effectively dilutes the holdings of existing investors by 50 percent. (*Id.*)

[5] After initially granting Plaintiff's TRO Application, the Court vacated the Temporary Restraining Order and cancelled the scheduled preliminary injunction hearing due to Plaintiff's noncompliance with the Court's Orders and the Local Rules for the Southern District of Florida. (DE 18.) The Parties also informed the Court that the ICO previously scheduled for July 10, 2024 was rescheduled to September 2024 marking a "significant change" in the circumstances initially considered by the Court at the time the Temproary Restraining Order was entered.

[6] Plaintiff also named Defendants Bondex Singapore and Bondex Inc. in his Complaint. Khan then filed a Notice of Voluntary Dismissal (DE 53) as to Bondex Singapore on October 1, 2024. To date, Bondex Inc. has not filed a response to the Complaint which, according to the certificate of service (DE 19) filed by Plaintiff, was due on August 6, 2024.

response Platform and Network move to dismiss Plaintiff's Complaint as a matter of law pursuant to Federal Rules of Civil Procedure 9(b) ("**Rule 9(b)**") and 12(b)(6) ("**Rule 12(b)(6)**").[7]

## II.   LEGAL STANDARD

Complaints alleging securities fraud are subject to a "triple-layered pleading standard." *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1317 (11th Cir. 2019).  To survive a motion to dismiss, a securities-fraud claim brought under Rule 10b-5 must satisfy the run-of-the-mill federal notice-pleading requirements under Federal Rule of Civil Procedure 8(a)(2) ("**Rule 8(a)(2)**"), the heightened pleading standards found in Rule 9(b), and the special fraud pleading requirements imposed by the PLSRA, 15 U.S.C. § 78u-4. *Id.* at 1317–18.

Under the notice-pleading requirements, a complaint must plead sufficient facts to state a claim that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although a complaint "does not need detailed factual allegations," it must provide "more than labels, and conclusions."  *Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do.") (citations omitted).  Rule 12(b)(6) does not allow dismissal of a claim because a court anticipates "actual proof of those facts is impossible," but the

---

[7] Defendant Network also moves for dismissal based on lack of personal jurisdiction pursuant to Federal Rule of Civil Proceudre 12(b)(2). As the Court finds that Plaintiff's Complaint should be dismissed for failure to state a claim and provides leave for Plaintiff to amend his allegations, including any jurisdictional allegations, the Court does not consider Defendant Network's lack of personal jurisdiction argument at this juncture. Plaintiff's Motion for Leave (DE 51) seeking to untimely file Bondex's Terms of Use to demonstrate that Network operates from Miami, Florida under the Court's jurisdiction is **DENIED**.

"[f]actual allegations must be enough to raise a right of relief above the speculative level." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 545).

A court must accept the factual allegations in the complaint as true and draw reasonable inferences in plaintiff's favor. *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). Although the court resolves all doubts or inferences in the plaintiff's favor, the plaintiff bears the burden to frame the complaint with sufficient facts to suggest that she is entitled to relief. *Twombly*, 550 U.S. at 556. Plaintiffs make a facially plausible claim when they plead factual content from which the court can reasonably infer that the defendants are liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. In determining whether a complaint states a plausible claim for relief, the court draws on its judicial experience and common sense. Dismissal pursuant to a motion under Rule 12(b)(6) is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 208 F.3d 1308, 1310 (11th Cir. 2000) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

In addition to the requirements of *Twombly, Iqbal*, and Rule 12(b), causes of action grounded in fraud are subject to the heightened pleading standards of Rule 9(b). *See Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007). That rule provides that "[i]n alleging fraud or mistake, a party must state with particularity

the circumstances constituting fraud or mistake" but that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Consequently, "[t]o satisfy the Rule 9(b) standard, [fraud claims] must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Ambrosia Coal*, 482 F.3d at 1316–17 (citing *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1380–81 (11th Cir. 1997)).

## III. DISCUSSION

In short, Plaintiff's allegations lack sufficient factual predicate to support the claims asserted in the Complaint. In Count I through Count III, Plaintiff alleges various federal securities law violations. Khan alleges that Palomera violated Section 10(b) of the of the Securities Exchange Act of 1934 ("***Exchange Act***") and U.S. Securities and Exchange Commission ("***SEC***") Rule 10b-5 ("***Count I***"),[8] and that all Defendants collectively violated Section 17(a) of the Securities Act of 1933 ("***Securities Act***") ("***Count II***") as well as Sections 5(a) and 5(c) of the Securities Act ("***Count III***"). (DE 1 at 5–7.) Because Plaintiff alleges securities fraud claims, Counts I through III are subject to the heightened pleading requirements of Rule 9(b). *S.E.C. v. City of Miami, Fla.*, 988 F. Supp. 2d 1343, 1353 (S.D. Fla. 2013).

---

[8] The Court recognizes that the PSLRA imposes an additional heightened pleading requirements for private securities actions where plaintiffs bear the burden to "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting 15 U.S.C. § 78u–4(b)(1))

At first glance, the Court notes that Count II includes vague assertions that are entitely devoid of any factual particularity.  Indeed, the most substantive portion appears to be a pure recitation of the statutory language found in 15 U.S.C. § 77q(a).  (DE 1 at 6.)  In particular, there is no clarity on the precise claim(s) Plaintiff brings against Defendants as Plaintiff fails to indicate which subsection of Section 17(a) he relies on in asserting his claim in Count II.  *See S.E.C. v. Merch. Cap., LLC*, 483 F.3d 747, 766 (11th Cir. 2007) (pointing out the different factual elements plaintiff must prove when bringing a Section 17(a)(1) claim versus a Section 17(a)(2) and Section 17(a)(3) claim).  It is well-established that § 17(a)(1) requires a showing of scienter whereas §§ 17(a)(2) and 17(a)(3) only require negligence.  *Id.*  As such, in order to assess whether Plaintiff adequately allege a claim upon which relief could be granted, it would be imperative for Plaintiff to, at minimum, to notify the Court as to which particular federal securities law violation he relies.  Because Plaintiff fails to fulfill this basic requiste, the Court finds that Count II should be dismissed.

Count III does not stray far from the terse allegations advanced in Count II.  Like Count II, Plaintiff groups all Defendants together with no allegations stating with particularity which Defendants' conduct led to what purported damages.  Specifically, Plaintiff generalizes that  "by engaging in the conduct described above," "Defendants violated Sections 5(a) and 5(c) of the Securities Act."  (DE 1 at 7.)  Based on this allegation, the Court understands, if anything, that Plaintiff relies on the conduct alleged in support of Plaintiff's securities fraud claims to the be same conduct that supports this nonfraud securities claim.  In addressing whether Rule 9(b) requires non-fraud securities claims to be plead with particularity, the Eleventh Circuit explained that "Rule 9(b) applies

when the misrepresentation justifying relief under the Securities Act is also alleged to support a claim for fraud under the Exchange Act and Rule 10(b)-5." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006). Accordingly, Plaintiff must "state with particularity the circumstances constituting fraud or mistake," so as to "alert[] defendants to the 'precise misconduct with which they are charged' . . . protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *See* Wagner, 464 F.3d at 1277; *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1986). The Complaint contravenes Rule 9(b)'s purpose as Plaintiff neglects to identify the time and place of any specific false statements made by any Defendant that would warrant damages due to a federal securities law violation. *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (affirming that under Rule 9(b), it is "sufficient to plead the who, what, when, where, and how of the allegedly false statement and then allege generally that those statements were made with the requistite intent."). Accordingly, Counts I and III are dismissed for failure to comply with Rule 9(b).

Next, Khan alleges several state law claims including civil theft ("**Counts IV–VIII**"), conversion ("**Count IX**"), and breach of contract ("**Count X**"). Here, Plaintiff's fatal flaw is that he conflates three separate causes of action which are premised on the same underlying conduct. In support of his civil theft and conversion claims, Khan asserts that Defendants unlawfully obtained, took, and used the 10,000,000 OBNX tokens that were stolen from his cyrptowallet, failing to remit any amount despite his written demand letters, depriving him of his property. (DE 1 at 8–12.) Based on a review of the Complaint, Plaintiff fails to distinguish these civil theft and conversion claims from the alleged breach of contract. In relevant part, Plaintiff states that Defendants' "failure to pay Plaintiff the

agreed-upon $800,000 and allow Plaintiff to retain the 10,000,000 OBNX tokens constitutes a breach of the Agreement entered into between the parties." (*Id.* at 13.) Under Florida law, in order for parties in a contractual relationship to bring a claim for civil theft or conversion, "the civil theft or conversion must go beyond, and be independent from, a failure to comply with the terms of a contract." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1054 (Fla. Dist. Ct. App. 2008). For it follows that "[a] simple breach of contract does not ordinarily constitute civil theft," and "a conversion action is not an appropriate means of vindicating a claim which essentially alleges breach of contract." *Misabec Mercantile, Inc. De Pan. v. Donaldson, Lufkin & Jenrette ACLI Futures, Inc.*, 853 F.2d 834, 839 (11th Cir. 1988) (citation omitted). Therefore, because the same conduct underlies all three causes of action and Plaintiff fails to assert any independent allegation that demonstrates any distinction amongst his state law claims, Counts IV through X are dismissed.[9]

## IV. CONCLUSION

Accordingly, having carefully reviewed the record and for the reasons stated above, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant The Bondex Platform Inc.'s Motion to Dismiss (DE 26), Defendant Bondex Network, Inc.'s Motion to Dismiss (DE 37), and

---

[9] In light of the dismissal of all underlying counts, Plaintiff's injunction claim against all Defendants ("**Count XI**") is also dismissed as it is a remedy and not a separate, standalone cause of action. *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092 (11th Cir. 2004) ("For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a baisis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim)."); *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005) ("[A]ny motion or suit for either a preliminary or permanent injubnction must be based upon a cause of action.").

Defendant Bondex Ecosystem Ltd.'s Motion to Dismiss (DE 67) are **GRANTED**.

2. Plaintiff's Complaint (DE 1) is **DISMISSED WITHOUT PREJUDICE**.

3. **WITHIN FOURTEEN (14) DAYS** of the date of this Order, Plaintiff may file an amended complaint that remedies the defects identified in the Complaint.[10] Any failure to timely file an amended complaint will result in the dismissal of this action without further notice.

4. In light of this Order, Plaintiff's Motion for Leave to File Exhibit A to Response to Motion to Dismiss (DE 51) is **DENIED**.

**DONE AND ORDERED** in Chambers in Miami, Florida on this 18th day of October, 2024.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

---

[10] Plaintiff must provide sufficient factual matter to satisfy the Federal Rules of Civil Procedure. In the event Plaintiff wishes to replead nultiple claims against multiple defendants, he must "specify[] which of the defendants are responsoible for which acts or omissions." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015).